THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ANTONIO FORNARO, Appellant.

(Argued February 28, 1910; decided March 29, 1910.)

APPEAL from a judgment rendered March 30, 1909, at a Trial Term for the county of Rensselaer, upon a verdict convicting the defendant of the crime of murder in the first degree.

*Thomas F. Powers* for appellant.

*Abbott II. Jones, District Attorney,* for respondent.

EDWARD T. BARTLETT, J.   The defendant, an Italian, about thirty years of age, was indicted by the grand jury of Rensselaer county on October 2nd, 1908, charging him with committing the crime of murder in the first degree on the 6th day of April, 1908, for killing Agnes Johnson, a colored woman.

On the 23d day of March, 1909, the trial of the accused began before the late Justice FITTS, he being defended by counsel assigned him. On the 29th day of March, 1909, the jury rendered a verdict convicting the defendant of murder in the first degree. The defense was an alibi.

On the 6th day of April, 1908, the date of the homicide, Agnes Johnson, the deceased, was in the employ of Mary Fay as a domestic in her house, 1725 Sixth avenue in the city of Troy. Mary Fay, as a witness, admitted on cross-examination that she had previously been convicted of conducting a disorderly house.

The deceased and the defendant for some time prior to the murder lived together in illicit relations. Several witnesses

testified that during this period the defendant and the deceased quarreled violently at various times, the former charging her with repeated acts of cohabitation with other men, and particularly in a house of ill-repute conducted by a Mrs. Green.

It was proved that the defendant made various threats to the effect that he would take the life of Agnes Johnson — "finish her " — " cut her throat from ear to ear."

Mary Fay testified that on the night of the homicide Agnes Johnson left her house at about seven o'clock, and that she did not see her again until between twelve and one o'clock that night, when she was lying dead in the rear of her premises.

It was proved that the deceased visited the house of Mrs. Green a little later in the evening and stated that she was afraid to return to the Fay house, as she feared the defendant might waylay her.

It appears by the testimony of several witnesses that the deceased was seen on certain streets in Troy late in the evening of April 6th; also that the defendant was observed lurking behind a telegraph pole near the Fay residence.

Mary Fay testified that the yard in the rear of her house was lower than the main floor and was reached by an outside flight of stairs. This witness further stated that between twelve and one o'clock on the night in question she heard a violent pounding on the door leading to the yard and she responded as soon as possible and saw the form of a woman lying at the foot of the stairs. She descended at once and ascertained that it was the body of the deceased and that her throat was cut from ear to ear. She immediately summoned a physician and the police. The doctor soon responded and two officers of the police force came a few moments later. When the doctor announced that life was extinct the undertaker and coroner were notified. Death was found to have been practically instantaneous as evidenced by the incised wound in the throat. A thorough examination of the body was made before it was removed to the undertaker's shop.

The defendant left the city of Troy soon after the murder and proceeded first to Springfield, Massachusetts, and subsequently returned to Pittsfield in that state, where he was arrested on the 11th of April. On the morning after the

homicide a razor was found covered with blood in a street near the scene of the murder; also a case in which it was kept. This razor was fully identified by those who had seen it in the possession of the defendant, and later he admitted it was his property and used in the commission of the crime.

The defendant made three distinct confessions in which he admitted that he killed the deceased. The first was made to the police officer residing at Pittsfield, Massachusetts, and who made the arrest on the 11th of April. This officer was an Italian, and the defendant stated to him that he could not speak English. The defendant was returned to Troy in the custody of two members of the police force of that city. On the trip defendant confessed to these officers in English, explicitly stating that he killed Agnes Johnson. Afterwards he confessed in like manner to a member of the Troy police force who was assigned to watch his cell after his return to that city.

On the trial the defendant took the stand and stated that he lived for four years in Springfield, Massachusetts, prior to taking up his residence in Troy. He also stated that he was in Springfield, Massachusetts, on the 6th day of April, 1908, and was not in Troy on the evening or night of the homicide. He gave his evidence through an interpreter, asserting that he could not speak English. He also denied that he had made any confessions as testified to by the witnesses for the People. His testimony was incredible and against the overwhelming weight of evidence. The only other witnesses sworn for the defense were Joseph and Mary Misisco, who testified that in the early part of April the defendant called at their house in Troy and asked if he could get a room for the night; they were unable to fix the precise date and their testimony is of no value.

The case for the defense rested wholly on the denial of the defendant to the effect that he was not in Troy on the night of the homicide.

The counsel for the defendant failed to point this court to any exception upon which he relied for the reversal of the judgment. A careful examination of the record discloses no reversible error in view of the fact that the defendant had

repeatedly admitted his guilt. The lengthy record in this case of three hundred and more pages bears witness to the very conscientious and merciful manner in which the late trial judge guarded the rights of the defendant by allowing his counsel great latitude in the introduction of evidence.

The judgment of conviction should be affirmed.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment of conviction affirmed.